IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL DAVID NEWMAN                *
                                 *
v.                               *    Civil Action No. WMN-12-654
                                 *
PALL FILTRATION AND              *
SEPARATIONS GROUP, INC.          *
                                 *
*      *      *      *      *      *      *      *      *      *      *      *      *

**<u>MEMORANDUM</u>**

Before the Court in this employment discrimination case
brought under the Americans with Disabilities Act (ADA) and
Maryland law, is a motion for summary judgment, ECF No. 15,
filed by Defendant, Pall Filtration and Separations Group, Inc.
(Pall).  Plaintiff, Paul David Newman, has opposed the motion,
ECF No. 21.

Upon consideration of the pleadings, facts, and applicable
law, the Court concludes that (1) no hearing is necessary, Local
Rule 105.6, and (2) Defendant's motion will be granted.

**I.    FACTUAL AND PROCEDURAL HISTORY**

In 1993, Newman began full-time employment as a Maintenance
Supervisor for Memtec America Corporation (Memtec).  He worked
in Plant 1 of Memtec's Timonium Facility.  Over the years,
Memtec was acquired by U.S. Filter which was later acquired by
Pall.  The changes had little impact on Newman's employment.

When Newman's employment began with Memtec, and through the
various ownership changes, he reported directly to Patrick J.

Crotty, Facilities Engineering Manager.  Karmen Lodgen, Memtec's

Human Resources Manager, also remained in her position

throughout Newman's employment.  In addition to the consistency

of personnel, Newman's primary job responsibilities remained the

same.  Specifically, he was to:

> (1)  Analyze mechanical & operational problems on
>      assigned equipment, plan for & take corrective
>      action.  Make necessary corrections & running
>      adjustments to maintain maximum production &
>      quality.
> (2)  Test equipment to check operation.  Clear jams &
>      set aside product for inspection and rework.
>      Test run equipment after repairs, changeovers or
>      extended downtime.
> (3)  Make preventive maintenance checks & inspections
>      of assigned equipment, report findings to
>      supervisor & take appropriate action.

Def. Mem., Ex. D.; Opp'n, Ex. B; Newman Dep. 33:1-33:5, 149:1-

19, 183:6-21; Crotty Dep. 20:9-19.  By Newman's testimony, these

duties consumed no less than 25 percent of his time, Newman Dep.

128:16-132:6, and for most of Newman's employment, no less than

50 percent of his time.  Newman Dep. 49:3-54:21.  Fulfilling

these duties required him to, among other things, walk, squat,

bend, climb ladders, crawl under machinery, and lift items

weighing between 25 and 50 pounds.  At no point was Newman a

manager for Pall or any of its predecessors, although there were

times when he was responsible for supervising an apprentice, or

collaborating with other mechanics to address general work-

related concerns such as access to tools and parts.

In December 2006, Newman became critically ill and
underwent surgery.  From December 13, 2006, until March 6, 2007,
Newman was on leave from his position at Pall pursuant to the
Family and Medical Leave Act (FMLA).  On March 16, 2007, Newman
provided Pall with a note from his doctor stating, "Mr. Newman
will be out of work for 6 months – minimum – from the date of
surgery which was December 21, 2006."  Def. Mem., Ex. F.
Newman's short-term disability benefits were extended through
June 19, 2007, "the maximum time allowed under the plan."  Def.
Mem., Ex. I.  Pall also continued Newman's leave during that
time.

In June 2007, Crotty informed Newman that before he could
return to work he would need to be able to fulfill all of his
job responsibilities, although Pall was open to having him
return on a reduced schedule.  That same month, Newman applied,
and was approved, for long-term disability benefits.  As a
result, in July 2007, consistent with Pall's policy, Newman was
terminated but informed that if he returned to work within the
following year he would be reinstated with full seniority and
benefits.  The following month Newman communicated with Crotty
about returning and was informed by Lodgen that he would need
clearance from his doctor.

On August 28, 2007, Newman's doctor permitted him to return
to work for four hours each day, four days a week, with the

3

following restrictions: "No lifting greater than 25 lbs – no climbing – no heights." Def. Mem., Ex. M; Newman Dep. 98:8-99:5.  Newman began work in September and, in accordance with his doctor's restrictions, was assigned only secondary duties because he could not fulfill his primary responsibilities. Crotty Dep. 27:1-16; Newman Dep. 99:6-100:4.

In April 2008, Newman's doctor permitted him to increase his work hours, but his restrictions remained in place.  Crotty, however, informed Newman that he could not increase Newman's hours because, based on Newman's feedback to Crotty, the secondary functions he was performing did not justify additional time.  Newman Dep. 105:9-106:18; Def. Mem., Ex. R.  Later that same year, Newman wrote a letter to Crotty again requesting more hours and outlining tasks he thought he could complete given his restrictions.  Def. Mem., Ex. S.  He also made clear in the letter that his restrictions would continue for an unforeseeable amount of time.  Id. ("I would like nothing more than to be able to do everything I use[d] to do but the cold hard fact is I can't, now or in the near future.  Hopefully I will eventually be able to, but there are no guarantees.")  Crotty responded that Pall could not offer Newman any more than the "part time hours it has" until Newman's doctor released him to complete his full duties as a mechanic.  Def. Mem., Ex. T.

In January 2009, Newman moved to another mechanic position in Plant 3 that would accommodate 20 hours per week.  The new position was temporary, i.e., "until the economy turned around," Newman Dep. 217:14-218:17, but allowed Newman to take on additional secondary duties such as bench repairs.

On January 21, 2010, Crotty and Plant Manager, Bruce Freese, informed Newman that, because of increasing business volume, Pall needed a full-time mechanic in Plant 3.  Newman was still unable to fulfill all of the job responsibilities for a full-time mechanic, but inquired as to whether he could return to a part-time position in Plant 1.  There were no part-time positions available.  Newman did not ask for any accommodations that would have allowed him to perform all of the required functions of a full-time mechanic.  Newman Dep. 189:20-191:4 ("I didn't ask for anything because there wasn't anything.").

Newman's employment with Pall ended in February 2010.  The parties offer differing accounts of exactly how Newman's separation transpired.  See, e.g., Def. Mem., Ex. V (e-mail string between Newman and Lodgen illustrating competing versions of the way Newman's employment ended).  Lodgen testified that it was Newman who decided to resign his position based on his medical restrictions and inability to fulfill the duties of a full-time mechanic.  Lodgen Dep. 77:18-78:5.  Newman, on the other hand, points to his interrogatory answers where he states

that he was terminated by Crotty.  In either case, it appears to be undisputed that Newman's last day of employment with Pall was February 5, 2010.

## II.  LEGAL STANDARD

Fed. R. Civ. P. 56 provides that summary judgment is appropriate if the moving party shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  A dispute of fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248. In making this determination, all justifiable inferences from the evidence must be drawn in favor of the non-moving party, <u>id.</u> at 255, but "the mere existence of a 'scintilla of evidence' is not enough to frustrate a motion for summary judgment."  <u>Champ v. Baltimore County</u>, 884 F. Supp. 991, 994 (D. Md. 1995) (quoting <u>Anderson</u>, 477 U.S. at 252), <u>aff'd</u>, 91 F.3d 129 (4th Cir. 1996); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986).  The dispute must also be over a material fact. <u>Anderson</u>, 477 U.S. at 247-48.  That is, one that might affect the outcome of the suit under the controlling substantive law; "factual disputes that are irrelevant or unnecessary" will not be considered in ruling on a motion for summary judgment.  <u>Id.</u> at 248.

## III. DISCUSSION

Newman brought suit under the ADA alleging that Pall terminated him because of his disability (Count I)[1] and failed to provide him with reasonable accommodations (Count II).[2]  He also stated identical claims (Counts III & IV)[3] under Maryland law. See Md. Code Ann., State Gov't §§ 20-601 & 20-606.[4]

---

[1] 42 U.S.C. § 12112(a) provides:
> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

[2] 42 U.S.C. § 12112(b)(5)(A) provides that "discriminat[ion] against a qualified individual on the basis of disability" includes –
> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity

[3] Md. Code Ann., State Gov't § 20-606 provides, in relevant part:
> (a) An employer may not:
> (1) fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of:
> (i) the individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment;
> *    *    *

As a threshold matter under the ADA, Newman must establish that he is a "qualified individual."  42 U.S.C. § 12112(a); Lusby v. Metro. Washington Airports Auth., 187 F.3d 630 (4th Cir. 1999) (per curiam unpublished opinion).  "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[5] 42 U.S.C. § 12111(8).  Newman must be able to show that he could perform the "essential functions" of the full-time mechanic's position, "in spite of" his disability.  Southestern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979).  Alternatively, he bears the burden of showing that he would be able to do so with a

---

> (4) fail or refuse to make a reasonable
> accommodation for the known disability of an
> otherwise qualified employee.

[4] Although, it is not entirely clear from the pleadings and Newman's briefing, it does not appear that he is contesting Pall's decisions to (1) seek a full-time mechanic in Plant 3 or (2) denying him a part-time position in Plant 1.  Instead, Newman seems to focus on Pall's expectation that he meet certain requirements in order to continue employment as a full-time mechanic.

[5] On this point, Maryland law is broader.  Rather than being required to show that he was a "qualified individual" who could perform the "essential functions" of the job, under Maryland law Newman is required to show that he could perform all of the functions of the mechanic's position in spite of his disability.  See Gaither v. Anne Arundel Cnty., 618 A.2d 244, 247 (Md. Ct. Spec. App. 1993).  As a result, because Newman cannot satisfy the ADA's narrower requirement, judgment will be entered in favor of Pall on Newman's claims under Maryland law.

reasonable accommodation from Pall.  Tyndall v. Nat'l Educ.
Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994).

Pall argues that Newman cannot establish that he is a
"qualified individual."  Specifically, Pall says that Newman
was, and continues to be, unable to meet the "essential
functions" of the mechanic's position - making adjustments and
repairs to the machinery, conducting maintenance checks, etc. -
activities which involve a variety of physical movements beyond
Newman's ability.  Def. Mem. at 14-16; Newman Dep. 33:14-35:4.
Newman does not dispute that he was unable to perform these
tasks.  Rather, he argues that they were no longer "essential
functions" of the full-time mechanic's position because, by the
time his medical leave began, his duties had shifted more
towards management and involved less hands-on maintenance work.
Opp'n at 11.

An "essential function" is one that bears "more than a
marginal relationship to the job at issue."  Tyndall, 31 F.3d at
213 (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th
Cir. 1993)); 29 C.F.R. § 1630.2(n)(1).  Whether a function is an
"essential function" is factual question.  Champ, 884 F. Supp.
at 998.  In making that determination, "consideration shall be
given to the employer's judgment as to what functions of a job
are essential."  42 U.S.C. § 12111(8).  Other factors that may
be considered include, the amount of time spent performing the

function, the consequences of not requiring the individual to
perform the function, and the current experience of those in
similar jobs.  29 C.F.R. § 1630.2(n)(3).

Here, the testimony from Lodgen and Crotty shows that
Crotty was responsible for determining Newman's job
responsibilities and that Newman's duties remained the same
throughout his employment.  Lodgen Dep. 36:3-6; Crotty Dep.
123:2-10.  Crotty testified that the three primary job
responsibilities identified on Newman's 2007-2008 evaluation,[6]
Def. Mem., Ex. D, were the essential functions of Newman's
position before and after Newman's medical leave.  Crotty Dep.
62:18-64:16.  Moreover, Crotty wrote on Newman's evaluation for
that year that "this review still shows the job responsibilities
and goals that are consistent with all of the maintenance
personnel."  Def. Mem., Ex. D.  Newman responds by relying on
his testimony and his broadly worded interrogatory answers which
suggest that he spent more time on management-type tasks and
less time working on machinery as his employment progressed.
Opp'n at 11 (citing Newman Dep. 54:7-21 (explaining that Newman
spent roughly 50 percent of his time on mechanic work and 50
percent of his time on management-type tasks); Opp'n, Ex. A at
10 ("Plaintiff's job responsibilities prior to his disability

---

[6] Newman's performance evaluations for the years prior to his
medical leave identified the same three primary job
responsibilities.  Opp'n, Ex. B.

had moved more toward the management side and away from working

on machinery.")).  Based on this record, the Court concludes

that no reasonable jury could find that Newman has met his

burden of showing that the responsibilities identified on his

evaluations were no longer "essential functions" of the full-

time mechanic's position.  See Champ, 884 F. Supp. at 998

(placing burden on discharged employee to show that certain

activities were not essential functions of position).  Thus,

because he was unable to fulfill those requirements, and because

it is undisputed that Newman did not ask for accommodations,

Newman Dep. 189:20-191:4, no reasonable trier of fact could find

that Newman is a "qualified individual" under the ADA.  The

Court will, therefore, grant Pall's motion.

**IV.   CONCLUSION**

        For the foregoing reasons, Pall's Motion for Summary

Judgment will be granted.  A separate order will issue.


                                   _____/s/_____
                                   William M. Nickerson
                                   Senior United States District Judge

February 20, 2012